## No. 7026.

### NALLE & CAMMACK vs. A. L. D. CONRAD ET AL.

A planter who has agreed to consign, and pay commissions on his *entire* crop to his factors, in consideration of certain promises and stipulations in his favor made by the factors, is released from his obligation to consign and pay such commission on whatever balance of his crop he may have on hand, when the factors shall fail and refuse to comply with *their* stipulations; more particularly when the failure of the factors to perform their part of the contract, disables the planter from performing his part of it.

Before the maker of a lost, or mislaid negotiable note, which was transferred before its maturity, can be made to pay it, he is entitled to be indemnified against its subsequent appearance.

APPEAL from the Fifth Judicial District Court, parish of East Baton Rouge. *McVea, J.* ·

*Favrot & Lamon* for plaintiffs and appellees.

*Herron & Bird* and *Beale* for defendants and appellants.

The opinion of the court was delivered by

DEBLANC, J.   In 1872, plaintiffs became the merchants and factors of the defendants, and—according to the former's declaration—the business relations between them were practically ended on the twenty-sixth of December 1874.   The character of those relations is shown by a letter of the first of February, 1872, from defendants to plaintiffs, in which they express the desire of obtaining from the latter—for that year and in advances of money and supplies—to assist them in cultivating their plantation —the sum of five thousand dollars.

In 1874, as in 1872, it was agreed that the sugar and molasses to be made on defendants' plantation should be shipped to plaintiffs, to re-imburse a balance then due to their firm and the advances to be made by them during the current year.   Under that agreement, defendants shipped to plaintiffs sugar and molasses until the twenty-sixth of December, when—as stated by the factors—their business relations were practically ended, and—thereafter—sent to another commissioner what was left of the crop of 1874.

On the twenty-sixth of March of that year, defendants—by a notarial act—had acknowledged that they were indebted to plaintiffs in the sum of $4204 68; and, to represent that indebtedness, had subscribed and delivered two negotiable notes payable to said plaintiffs or their order—one on the first, the other on the fourteenth of December 1874, both secured by a conventional mortgage on defendant's share in the plantation known as "Cypress Hall." The last maturing of said notes was endorsed by plaintiffs to the order of A. Cammack junior, and mislaid or lost in the city of New York, where it was used as collateral security.

This suit was brought to recover the balance due on the lost note, and—besides—two hundred seventeen dollars and twenty-five cents, for commission on that portion of defendants' crop shipped to another factor, after the twenty-sixth of December 1874.

We, unhesitatingly, acknowledge— as contended for in behalf of plaintiffs, that the planter's crop—every pound of sugar, every gallon of molasses, every bale of cotton, every barrel of rice of that crop, must be punctually shipped and consigned to the factor who has advanced to raise and harvest it, and that—whether so consigned or not—the factor has a right to and can justly claim a commission on every fraction of the same; unless, however, he has himself failed to comply with any of the express or necessarily implied conditions of his contract with the planter; for, one who breaks a contract, forfeits his right to compel the others to execute it.

In this case, and as late as December 1874, the most perfect understanding seems to have existed between plaintiffs and their clients. What then occurred between them? A. L. D. Conrad testified that he came to New Orleans, in the latter part of December of that year, and —on his arrival—went to plaintiffs' office. There, he met Mr. Nalle, who asked him the object of his visit to the city; he informed him that it was to settle with Mr. Gay, and that he would go and see him the next day. "That is the way you, country people, do"—replied Mr. Nalle; "go now, and tell Mr. Gay that I will accept a draft and pay the amount." The next day, plaintiffs refused to pay the draft given at the suggestion of one of them. That refusal was not—of itself—a sufficient cause to authorize the consignment to other factors of the balance of defendants' crop.

This is not all: when, the day after, Conrad went to plaintiffs' office, he there found the tax collector, who had already seized their sugar, and the man who had furnished the barrels for the molasses, to both of whom he had given drafts on plaintiffs' firm, and he was notified by both that the firm had refused to pay those drafts. This was wrong, and—on plaintiffs' part—a violation of their contract. Unless those

barrels and taxes were paid, not only the sugar and molasses could have been levied upon, sold and sacrificed, but—by their factors' course —the planters were effectually prevented from complying with the obligation of their contract. The day before, Mr. Nalle had told Mr. Conrad: "You have got plenty of money here, pay Mr. Gay"—the day before, he had promised that the cooper's and tax collector's bills would be paid. In so doing—by merely paying the taxes and the price of the barrels, they would have enabled and could have compelled defendants to consign to their house the balance of a crop, which they themselves value at $8690, more than six times the amount of their actual claim against said planters.

Pressed by the cooper, and pressed by the tax collector, who had already seized, Mr. Conrad said to Mr. Nalle: "If you do not pay the drafts held by those parties, I will have to get another merchant." "I would be glad that you would," was the answer. This was sworn to by two of the defendants and denied by plaintiffs. They did not—however —deny that they had refused to pay the last mentioned drafts. They paid—as shown by their receipt—the State taxes of 1874; but that other taxes were then due, there can be no doubt—for, the tax collector himself, the holder of one of the unaccepted drafts, swore that he had already seized sugar to satisfy said taxes—and that, when he became convinced that they would not be paid by Nalle and Cammack, he advised Conrad to go to Richard Flower and apply to him for assistance. Conrad followed his advice and Flower paid the taxes. At that date, there was to defendants' credit—in the house of Nalle and Cammack— $4654 70, which were—afterwards—applied by the latter to the partial payment of the supplies and mortgage notes due them by defendants.

Under these circumstances, it was not without sufficient cause that the planters discontinued to ship their crop to plaintiffs, whose implied obligation was to pay, if not the collector and the cooper, most certainly the cooper; and this they could have done without the least apprehension of losing a cent.

The district court refused to allow any commission on the molasses, for the reason that they had been disposed of on the plantation and there given in payment of barrels purchased for the use of said plantation—this is correct. The court allowed plaintiffs, on the sugar not shipped to them, a commission of $145 92. In this there was error.

The note sued upon and which has been mislaid or lost, was transferred before maturity and delivered in New York as a collateral security. By its own terms and the terms of its endorsement, that note was negotiable, and defendants' demand that plaintiffs be ordered to give security to indemnify them against its appearance, should have been granted. It is true that the Code provides that the judge may, if required,

order security to be given—but his discretion in that regard is not unlimited, and—when circumstances render it necessary—he should so order. The form of the note, that of the endorsement and the fact that it passed into the hands of third parties as a collateral guaranty, justify defendants' demand.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be and it is hereby amended, and plaintiffs' demand for one hundred and forty-five dollars and ninety-two cents and the interest thereon, for commission on sugar, disallowed and rejected.

It is further ordered, adjudged and decreed, that—as amended—the judgment of the lower court is affirmed, but that no execution issue thereon, until plaintiffs shall give security in an amount corresponding to that of this judgment, in principal, interest and costs, to indemnify defendants against the appearance of the note sued upon, and which is alleged to have been mislaid or lost in the city of New York.

It is lastly ordered that the costs of this appeal be paid by plaintiffs.